**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

JUL 13 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MADAY ELIZABETH MARENCO-
HERNANDEZ; and JHENNIFER
MICHELL MARENCO-HERNANDEZ

Petitioners,

v.

MERRICK GARLAND, Attorney General,

Respondent.

No. 17-73279

Agency Nos. A206-800-286
A206-800-285

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 31, 2020
Seattle, Washington

Before: BYBEE and COLLINS, Circuit Judges, and BASTIAN,** Chief District
Judge.

Maday Elizabeth Marenco-Hernandez ("Marenco-Hernandez"), a native and

citizen of El Salvador, petitions for review of the decision of the Board of

Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ")

denying her applications for asylum, withholding of removal, and relief under the

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Stanley A. Bastian, Chief Judge of the United States District
Court for the Eastern District of Washington, sitting by designation.

Convention Against Torture (the "Torture Convention"). Marenco-Hernandez's daughter, Jhennifer Michell Marenco-Hernandez, is a derivative beneficiary with respect to her mother's application for asylum only. *See Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005); 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R § 1208.21. We have jurisdiction under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, and we grant in part and deny in part the petitions for review.

## I

Marenco-Hernandez's claims for asylum and withholding of removal are predicated on persecution by members of the MS-13 gang, who allegedly extorted and twice raped her, and by Salvadoran government doctors, who, after the first rape resulted in pregnancy, allegedly sedated her for three months and forced her to carry her pregnancy to term. We hold that the agency permissibly concluded that the horrific mistreatment of Marenco-Hernandez by MS-13 did not constitute persecution on account of a protected ground, but that the agency erred by failing to address Marenco-Hernandez's claim that she was persecuted at the hands of Salvadoran government doctors.

## A

To establish eligibility for asylum, an applicant must show that she was persecuted, or has a well-founded fear of persecution, "on account of race, religion, nationality, membership in a particular social group, or political opinion." *See*

2

8 U.S.C. § 1101(a)(42)(A); *see also id.* § 1158(b)(1)(B) (applicant must show that one of these protected grounds "was or will be at least one central reason for persecuting the applicant"). "To qualify for withholding of removal, an applicant must show a 'clear probability' of future persecution" on account of one of the same protected grounds. *Garcia v. Holder*, 749 F.3d 785, 791 (9th Cir. 2014) (citation omitted). However, for a withholding claim, the protected ground need only be "a reason" for the persecution, and not (as with asylum) "one central reason." *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017). Here, the agency properly concluded that, under either standard, Marenco-Hernandez's past or potential future mistreatment by MS-13 lacked the requisite nexus to a protected ground.

Marenco-Hernandez argued that MS-13 mistreated her because it attributed to her an anti-*machismo* political opinion, but substantial evidence supports the agency's rejection of this claim. Marenco-Hernandez emphasizes the record evidence showing the pervasive mistreatment of women within Salvadoran culture, but neither that evidence nor the circumstances of the attacks on her compel the conclusion that those attacks were due to Marenco-Hernandez's perceived opinions concerning such misogyny. For example, Marenco-Hernandez argues that the comment by one of her rapists that the attack was retribution for "not doing what he wanted" reflected his perception of her feminist "rebellion against male

3

dominance," but the agency could permissibly construe the comment as instead reflecting only the gang's general desire to enforce compliance with its coercive criminality. The latter conclusion is further supported by Marenco-Hernandez's testimony that her second rape resulted from her refusal to pay extortion to the gang. On this record, the agency could permissibly conclude that the gang's attacks were "due to economic and personal reasons," and not any actual or perceived political opinions. *See Ramos Barrios v. Holder,* 581 F.3d 849, 856 (9th Cir. 2009) ("Ramos similarly failed to present evidence . . . that the gang imputed to him any particular political belief. The evidence instead supports the conclusion that the gang victimized him for economic and personal reasons.").

Marenco-Hernandez also argues that she was persecuted by MS-13 on account of her membership in the social group "Salvadoran women and girls."[1] Even assuming *arguendo* that this group is cognizable, we conclude that substantial evidence supports the agency's determination that Marenco-Hernandez's membership in this group was not a reason for MS-13's abuse of her. As we have explained, the agency here could permissibly conclude from the record

---

[1] In her opening brief in this court, Marenco-Hernandez also asserts that she is a member of the social group consisting of "Salvadoran Women and Girls who become pregnant as a result of rape who wish to terminate the pregnancy," but she argues that she was mistreated on account of her membership in *that* group only by the government doctors who treated her at the hospital after the rape, and not by MS-13. We discuss that claim separately below.

evidence that Marenco-Hernandez's mistreatment by MS-13 was due to her refusal to comply with the demands of the gang. Moreover, the record contains ample evidence that MS-13 attacks and extorts individuals in El Salvador on a widespread and indiscriminate basis. Although the particular type of abuse Marenco-Hernandez suffered (rape) was associated with her gender, the agency could permissibly conclude that the fact that she was abused by MS-13 was precipitated by her refusal to submit to the demands of the gang.

**B**

The agency erred, however, by failing to consider Marenco-Hernandez's further argument that her treatment by Salvadoran government doctors *after* her rape by MS-13 members amounted to persecution. Marenco-Hernandez sufficiently raised this distinct argument in her post-hearing brief before the IJ, as well as in her brief before the BIA. The agency, however, simply failed to address it. Because "IJs and the BIA are not free to ignore arguments raised by a petitioner," *Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005), we grant the petition to the extent that the agency denied asylum and withholding of removal without considering this claim. Although Marenco-Hernandez invites us to decide this claim on the merits, we express no view on it and instead remand to the agency to consider this issue in the first instance. *See Coronado v. Holder*, 759 F.3d 977, 987 (9th Cir. 2014) (noting that we are generally "'not permitted to

decide a claim that the immigration court has not considered in the first instance'" (citation omitted)). In evaluating this claim, the agency should consider all of the circumstances concerning the government's treatment of Marenco-Hernandez, including its potential awareness of her rape by MS-13 members, even though (as we have explained) that rape did not itself constitute persecution on a protected ground.

## II

For related reasons, we also conclude that the agency erred in its evaluation of Marenco-Hernandez's claim under the Torture Convention.

Similar to her asylum and withholding claims, Marenco-Hernandez's Torture Convention claim before the agency rested on the assertion that she had endured *two* forms of torture in which government agents either acquiesced or participated. First, she argued below that the Salvadoran government acquiesced in her abuse at the hands of the MS-13 gang. Second, she argued before both the IJ and the BIA that she suffered torture when government doctors sedated her for three months and forced her to carry her pregnancy to term, causing her lasting mental trauma. The agency completely overlooked the latter argument and thereby failed to consider "all evidence relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3). And because Torture Convention "claims must be considered in terms of the aggregate risk of torture from all sources, and not as

6

separate, divisible [Torture Convention] claims," *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015), we decline to reach any aspect of the merits of Marenco-Hernandez's claim for relief under the Convention. We instead remand her Torture Convention claim, in its entirety, to the agency so that it can properly examine the full range of Marenco-Hernandez's arguments under the proper standards. *See Coronado*, 759 F.3d at 987.

\*     \*     \*

The petitions for review are **GRANTED IN PART AND DENIED IN PART**, and we **REMAND** to the BIA for further proceedings consistent with this memorandum.